# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOSEPH WORKMAN**<br>12211 Aquilla Rd.<br>Chardon, Ohio 44024<br><br>       Plaintiff,<br><br>vs.<br><br>**VILLAGE OF WOODMERE**<br>c/o Frank Consolo, Law Director<br>627 West Saint Clair Avenue<br>Cleveland, Ohio 44113<br><br>and<br><br>**SHEILA MASON**<br>*in her official capacity as*<br>*Woodmere Chief of Police*,<br>27899 Chagrin Boulevard<br>Woodmere, Ohio 44122<br><br>and<br><br>**CHRISTOPHER COLON**,<br>*in his official and personal capacity*,<br>27899 Chagrin Boulevard<br>Woodmere, Ohio 44122<br><br>       Defendants. | CASE NO.<br><br>JUDGE<br><br>**Complaint**<br><br>(Jury demand endorsed hereon) |

## Introduction

1. One Monday morning in December 2019, Woodmere Police Sergeant Christopher Colon arrested a young man for swearing at him.

2. The young man had been playing guitar on the sidewalk outside a commercial shopping plaza when Colon told him Woodmere ordinances required him to stop. When the young man referred to his right to free

speech, Colon explicitly threatened to arrest him if "you keep cussing." Colon then escalated the situation, openly daring the young man to call him a name. When the young man then cursed at Colon—mentioning his First Amendment rights in the process—Colon immediately arrested him. At the same time, Colon told the young man he was being arrested on "an asshole charge." That young man is Joseph Workman.

3. The United States Supreme Court has long-recognized that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," and "that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint." *Houston v. Hill*, 482 U.S. 451, 461, 471 (1987). Defendants chose to violate this constitutional axiom and arrest and prosecute Workman for his exercise of free speech. He brings this case to redress Defendants' violation of his clearly established constitutional rights.

## Parties

4. At all times relevant to this lawsuit, Workman was a United States citizen and resident of the State of Ohio.

5. Mason is Chief of Police for the Village of Woodmere.

6. Mason is a policymaking official for the Village of Woodmere Police Department with respect to, among other things, decisions to file criminal charges, decisions to arrest, and police practices and training.

7. Colon is a sergeant with the Woodmere Village Police Department.

8. Mason and Colon are each an employee of the Village of Woodmere.

9. Mason and Colon are each a "person" within the meaning of 42 U.S.C. § 1983.

10. At all times relevant to this lawsuit, for purposes of federal law, Mason and Colon were each a "state actor," acting under color of state law.

11. At all times relevant to this lawsuit, Mason and Colon were each an employee, agent, and/or servant of the Village of Woodmere, acting in the course and scope of their employment, agency, and/or service.

12. Lon Stolarsky is the Prosecutor for the Village of Woodmere.

13. As the Prosecutor, Stolarsky is a policymaking official for the Village of Woodmere with respect to decisions to prosecute and charge.

## Jurisdiction and venue

14. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the claims involved arise under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3).

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit occurred in this District.

## Factual allegations

16. On the morning of Monday, December 16, 2019, Joseph Workman was playing guitar on the sidewalk near the corner of Chagrin Boulevard and Brainard Road in Woodmere, Ohio, adjacent to Eton Chagrin Boulevard shopping center.

17. The following map shows his location, marked by a star:



18. It is a commercial area, across the street from a gas station and the police station, and next to the parking lot for a nearby Starbucks and two restaurants.

19. It is not a quiet, out-of-the-way intersection. According to the Ohio Department of Transportation, in 2019 that stretch of Chagrin Boulevard averaged 11,768 vehicles passing through per day.

<u>Woodmere police arrest Workman for his protected speech</u>.

20. At some point that morning, Woodmere Police Officer Sean Lemiec and Sergeant Christopher Colon approached Workman. What ensued is recorded on Lemiec's body camera.

21. Lemiec told Workman he could not play his guitar where he was standing because, according to Lemiec, it was private property.

22. After a few seconds of discussion, Workman moved to what Lemiec indicated was the public sidewalk, by taking one step to his left.

23. When Colon told Workman if he played his guitar again, he would take Workman to jail, Workman began to put his guitar away in his bag.

24. Upset by what he believed was an improper order by Colon, while he was putting away his guitar, Workman told Colon he was "fucking being an asshole."

25. Colon responded by threatening Workman, telling him "you keep cussing I'm going to arrest you for disorderly conduct."

26. Workman countered by citing his First Amendment rights, asking "what do you mean, it's freedom of speech?"

27. Colon disagreed, threatening Workman again: "No, it's not freedom of speech . . . . Check your ordinances if you're so smart. Check your ordinance. I'm going to take you to jail."

28. Zipping up his bag with his guitar inside, Workman again cited his First Amendment rights, telling Colon: "The First Amendment protects us against that. I'm putting the guitar away. I can call you any kind of word I want to call you."

29. At that, Colon chose to further escalate the situation by baiting Workman, taunting him to "go ahead and call me."

30. Workman replied with "you're a dummy," adding "what are you going to do about that?"

31. Colon answered that he was not going to arrest Workman for that, telling him "I'm not going to do nothing." Just seconds later, Colon changed course.

32. Workman responded "you can't because the First Amendment protects me you fucking…," before Colon cut him off and challenged him "you fucking what?"

33. Workman's sole answer was to once more explicitly cite his constitutional right to free speech: "First Amendment. The First Amendment, dude. You ever hear of that one?"

34. Colon immediately arrested Workman.

35. When Workman asked why Colon was arresting him, Colon's answer was to-the-point: "*It's called an asshole charge*."

36. The video does not show Workman struggling or trying to flee. The officers took him to the ground and handcuffed him anyway.

*The Village retaliates against Workman
by charging him and prosecuting him for 15 months*.

37. While pinned on the ground by the officers, Workman said his arrest violated his right to free speech and that he intended to pursue legal action.

38. That morning, Lemiec filled out an Investigative Report of the incident with a misleading narrative that exaggerates Workman's role, minimizes Colon's role, and contains allegations contradicted by his own body camera footage.

39. On December 16, 2019, Woodmere charged Workman in Bedford Municipal Court with four criminal counts: a violation of the Woodmere commercial-zone noise ordinance; disorderly conduct; obstructing official business; and, resisting arrest. The latter two charges are felonies.

6

40. The Village prosecuted Workman for the next 15 months, taking his case all the way to trial on February 17, 2021, with the verdict announced from the bench on March 24, 2021.

41. Colon admitted at trial that he arrested Workman because of his speech, testifying on direct examination that "the abusive language was what led up to his arrest."

42. The Municipal Court acquitted Workman of obstruction of justice and resisting arrest, the two felonies.

43. Ohio law did not permit Colon to arrest Workman on the remaining two charges.

*The Village's arrest and prosecution of Workman amount to a policy or custom for the purposes of Monell liability.*

44. Upon information and belief, the Chief of Police and Prosecutor ratified the unlawful arrest by approving, authorizing, and/or bringing criminal charges against Workman, which conduct equates to an official policy or custom.

45. Upon information and belief, the Chief of Police ratified the unlawful arrest by failing to meaningfully investigate Colon's conduct towards Workman and/or by failing to discipline him for violating Workman's constitutional rights, which failure equates to an official policy or custom.

46. Upon information and belief, the Chief of Police and the Village have a policy or custom of failing to adequately train officers on the First Amendment rights of citizens, and such failure amounts to deliberate indifference to the rights of persons with whom the police come into contact.

47. Defendants' failure to adequately train its officers was closely related to or actually caused Workman's injury.

### First claim for relief –
### Retaliatory arrest under the First and Fourteenth Amendments

48. Workman realleges each and every allegation set forth above as if fully rewritten.

49. Workman engaged in protected speech in his statements towards Colon.

50. Workman engaged in protected speech by asserting his right to free speech after his arrest.

51. By arresting him, Colon took adverse action against Workman.

52. There is a causal connection between Workman's protected speech and his arrest.

53. Colon arrested Workman in retaliation for his constitutionally protected speech.

54. Defendants lacked probable cause to arrest Workman.

55. Even if Defendants had probable cause to arrest Workman, they did so when they have not arrested otherwise similarly situated individuals not engaged in the same sort of protected speech.

56. Defendants' actions violate the First and Fourteenth Amendments of the U.S. Constitution.

57. For the reasons described above, Defendants' conduct reflects a policy or custom of the Village of Woodmere.

58. Defendants are therefore liable to Workman under 42 U.S.C. § 1983.

59. As a direct and proximate result of Defendants' conduct, Workman: suffered emotional distress and humiliation; incurred costs and expenses, such as attorneys' fees and costs of suit; and, was otherwise injured. Some or all of his damages will continue to accrue in the future.

60. The conduct of Colon, as described above, was done maliciously and/or with reckless indifference to Workman's federally protected rights, for which Colon, in his individual capacity, is liable for punitive damages.

### Second claim for relief –
### False arrest under Ohio law

61. Workman realleges each and every allegation set forth above as if fully rewritten.

62. Defendant Colon arrested Workman without probable cause.

63. Defendants are therefore liable to Workman under Ohio law for false arrest.

64. As a direct and proximate result of Defendants' conduct, Workman: suffered emotional distress and humiliation; incurred costs and expenses, such as attorneys' fees and costs of suit; and, was otherwise injured. Some or all of his damages will continue to accrue in the future.

65. The conduct of Colon, as described above, was done maliciously and/or with reckless indifference to Workman's protected rights, for which Colon, in his individual capacity, is liable for punitive damages.

### Third claim for relief –
### Retaliatory prosecution under the First and Fourteenth Amendments

66. Workman realleges each and every allegation set forth above as if fully rewritten.

67. Workman engaged in protected speech in his statements towards Colon.
68. Workman engaged in protected speech by asserting his right to free speech after his arrest.
69. By charging and prosecuting him, Defendants took adverse action against Workman.
70. There is a causal connection between Workman's protected speech and the adverse action Defendants took against him.
71. Defendants lacked probable cause to charge and prosecute Workman for obstructing official business and resisting arrest, the felony charges on which he was acquitted.
72. Defendants lacked probable cause to charge and prosecute Workman for disorderly conduct.
73. Defendants lacked probable cause to charge and prosecute Workman with a noise-ordinance violation.
74. Defendants' actions violate the First and Fourteenth Amendments of the U.S. Constitution.
75. For the reasons described above, Defendants' conduct reflects a policy or custom of the Village of Woodmere.
76. Defendants are therefore liable to Workman under 42 U.S.C. § 1983.
77. As a direct and proximate result of Defendants' conduct, Workman: suffered emotional distress and humiliation; incurred costs and expenses, such as

attorneys' fees and costs of suit; and, was otherwise injured. Some or all of his damages will continue to accrue in the future.

78. The conduct of Colon, as described above, was done maliciously and/or with reckless indifference to Workman's federally protected rights, for which Colon, in his individual capacity, is liable for punitive damages.

<u>**Fourth claim for relief –**</u>
<u>**Malicious prosecution under Ohio law**</u>

79. Workman realleges each and every allegation set forth above as if fully rewritten.

80. Colon and Mason made, participated in, or influenced the decision to charge Workman.

81. Defendants lacked probable cause to charge and prosecute Workman for obstructing official business and resisting arrest, the felony charges on which he was acquitted.

82. Defendants lacked probable cause to charge and prosecute Workman for disorderly conduct.

83. Defendants lacked probable cause to charge and prosecute Workman with a noise-ordinance violation.

84. Workman suffered a deprivation of liberty as a result of Defendants' conduct, including being taken into custody, and then enduring 15 months of criminal prosecution by the Village.

85. Workman's prosecution would be likely to chill a person of ordinary firmness from further participation in the protected speech at issue.

86. Defendants' actions were motivated, at least in part, by Workman's constitutionally protected speech.

87. Defendants are therefore liable to Workman under Ohio law for malicious prosecution.

88. As a direct and proximate result of Defendants' conduct, Workman: suffered emotional distress and humiliation; incurred costs and expenses, such as attorneys' fees and costs of suit; and, was otherwise injured. Some or all of his damages will continue to accrue in the future.

89. The conduct of Colon, as described above, was done maliciously and/or with reckless indifference to Workman's protected rights, for which Colon, in his individual capacity, is liable for punitive damages.

### Fifth claim for relief
### False arrest under the Fourth and Fourteenth Amendments[1]

90. Workman realleges each and every allegation set forth above as if fully rewritten.

91. Defendant Colon arrested Workman without probable cause.

92. Defendants' actions violate the Fourth and Fourteenth Amendments of the U.S. Constitution.

93. For the reasons described above, Defendants' conduct reflects a policy or custom of the Village of Woodmere.

---

[1] The fifth and sixth claims are brought now to preserve the statute of limitations. Pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), they should be held in abeyance until Workman obtains a favorable termination of the remaining criminal charges in state court.

94. Defendants are therefore liable to Workman under 42 U.S.C. § 1983.

95. As a direct and proximate result of Defendants' conduct, Workman: suffered emotional distress and humiliation; incurred costs and expenses, such as attorneys' fees and costs of suit; and, was otherwise injured. Some or all of his damages will continue to accrue in the future.

96. The conduct of Colon, as described above, was done maliciously and/or with reckless indifference to Workman's federally protected rights, for which Colon, in his individual capacity, is liable for punitive damages.

### Sixth claim for relief
### Malicious/retaliatory prosecution
### under the Fourth and Fourteen Amendments

97. Workman realleges each and every allegation set forth above as if fully rewritten.

98. Defendants initiated criminal charges and then prosecuted Workman without probable cause and in retaliation for his constitutionally protected speech.

99. Workman suffered a deprivation of liberty as a result of Defendants' conduct, including being taken into custody, and then enduring 15 months of criminal prosecution by the Village.

100. Defendants' actions were motivated, at least in part, by Workman's constitutionally protected speech.

101. Defendants' conduct violated the Fourth and Fourteenth Amendments.

102. For the reasons described above, Defendants' conduct reflects a policy or custom of the Village of Woodmere.

103. Defendants are therefore liable to Workman under 42 U.S.C. § 1983.

104. As a direct and proximate result of Defendants' conduct, Workman: suffered emotional distress and humiliation; incurred costs and expenses, such as attorneys' fees and costs of suit; and, was otherwise injured. Some or all of his damages will continue to accrue in the future.

105. The conduct of Colon, as described above, was done maliciously and/or with reckless indifference to Workman federally protected rights, for which Colon, in his individual capacity, is liable for punitive damages.

**Wherefore,** Workman prays for judgment against Defendants for:

(a) emotional distress damages and other compensatory damages in amounts that will fully and fairly compensate him for his injury, damage, and loss;

(b) equitable and prospective injunctive relief against future constitutional violations;

(c) a declaratory judgment holding that Defendants have violated Workman's constitutional rights;

(d) punitive damages against Colon in his individual capacity;

(e) attorneys' fees and costs of suit under 42 U.S.C. § 1988, 42 U.S.C. § 2000cc-2(a), and other applicable federal laws; and,

(f) such other appropriate relief as the Court deems just.

## Jury demand

A trial by jury is hereby demanded in the within matter in the maximum number of jurors allowed by law.

Respectfully submitted,

/s/ Matthew D. Besser
Cathleen M. Bolek (0059884)
Matthew D. Besser (0078071)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
cbolek@bolekbesser.com
mbesser@bolekbesser.com

*Counsel for Plaintiff*